NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 30, 2020[*]
Decided April 30, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-3409

| | |
|---|---|
| KENNETH GERING,<br>    *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 18-C-421 |
| PAUL KEMPER, et al.,<br>    *Defendants-Appellees.* | Lynn Adelman,<br>*Judge.* |

## O R D E R

Kenneth Gering, an inmate at Racine Correctional Institution in Wisconsin, suffers from back and foot pain. Although he was under regular care for these conditions, he sued prison officials alleging that they deliberately ignored these conditions in violation of the Eighth Amendment by not accelerating his treatment. The

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

district court correctly entered summary judgment for the defendants because no evidence suggests that the pace of treatment was reckless, so we affirm.

Gering suffers from chronic back pain for which he eventually received steroid injections. A prison doctor first suggested in late 2016 that he might need steroids for his back pain, depending on the results of an outside evaluation. The doctor did not state that the offsite exam was "urgent" or a "priority"; without that designation, prison staff treat requests for treatment as "routine." Over the next six months, prison officials tried to schedule an offsite evaluation at a nearby hospital. By May 2017, they turned to a local clinic because the hospital could not schedule him as a result of its high volume of patients. At his clinic evaluation, a doctor said that to determine if Gering needed steroids, an MRI exam was necessary. Three months later, a doctor at the prison ordered the MRI; two months after that, a prison officer scheduled the exam, and Gering received the MRI exam the following month. The results confirmed that Gering needed steroids. The injections, however, were not forthcoming for another six months.

The defendants assumed that the outside clinic, which had recommended the injections based on the MRI results, would schedule them, but the clinic did not follow through. The defendants discovered this omission when Gering met with his prison doctor in May 2018; the doctor then set the injection schedule, and Gering received his first injection in July 2018. Between late 2016 (when Gering first learned of possible steroid injections) and July 2018, he was receiving ongoing drug treatment for his back pain.

Gering also suffers from a fractured foot. His foot was first x-rayed in late 2016, but no fracture was revealed. He nonetheless had pain and difficulty walking, so he received a bandage and shoe inserts. Four months later, Gering's offsite doctors thought that he might have gout, so they ordered testing and arch support. Again, no doctor wrote that testing was "urgent" or a "priority." About a year later, his doctors diagnosed a fracture, and he received a boot brace. When Gering was x-rayed again in July 2018, doctors saw that this fracture had healed but that a new one had developed. So Gering received new supportive shoes, treatment for pain, and, later, custom inserts for his shoes. In September, one of Gering's doctors thought that he might eventually need surgery, but none was scheduled by the end of the year.

This suit came next. Gering sued the administrators and supervisors in the prison's health services unit involved in scheduling, and the warden, for deliberate indifference to his medical needs by delaying scheduling appointments for his back and

foot treatment. The defendants moved for summary judgment, which the district court entered. It explained that any delays were "typical for chronic, non-emergency conditions," were caused by the outside provider, and were not the result of a lack of concern. The warden, the court also ruled, was not liable because he had no personal involvement and could defer to the medical decisions of the physicians and nurses.

On appeal, Gering challenges the conclusion that he presented insufficient evidence of deliberate indifference. For Gering to get to trial on his claim that the defendants violated the Eighth Amendment through deliberate indifference to his medical needs, he must present evidence that the defendants knew about, but disregarded, his serious medical condition. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). He has not done so.

Gering first argues that his back and foot needs were a "priority," so the defendants should have gotten him more aggressive treatment sooner. But Gering has not sued any doctor, and the doctors are the ones who did not designate exploring possible steroid injections for his back and further treatment (including possible surgery) for his foot a "priority." So scheduling evaluations for these options was reasonably regarded as "routine." Gering replies that, in light of his obvious pain and difficulty walking, the defendants—the administrators in the prison's health services unit—should have contacted the doctors to determine whether his needs were more urgent. But non-medical prison staff "ordinarily are entitled to defer to the judgment of medical professionals" unless it reflects "obvious incompetence." *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 676 (7th Cir. 2012). Gering was receiving drugs to manage his back pain and foot and shoe supports for his foot pain while he waited for evaluations about more aggressive treatment. Therefore, the defendants had no reason to believe that the lack of a "priority" order for reaching decisions on aggressive treatment showed obvious incompetence. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Gering next argues that the defendants are guilty of an "inexplicable delay" of about 18 months in scheduling appointments, which he believes reflects deliberate indifference. *See Petties*, 836 F.3d at 730–31. He contends that they delayed scheduling appointments to assess his need for steroids and treatment for his feet. But the delays were not inexplicable and do not reflect deliberate indifference. For his back, the undisputed evidence is that the prison's staff tried to schedule an offsite visit at a hospital, but when the volume of patients there was too great, they promptly sent him to a clinic, and within a few months he received his MRI exam. For his foot, he received two x-ray exams, special shoes, inserts, supports, bandages, and braces over a year and

a half, so again the defendants did not ignore his needs. Without any contradictory evidence, the district court rightly accepted these facts, which refute Gering's claims. *See Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 545 n.2 (7th Cir. 2011).

Finally, Gering argues that the defendants culpably ignored the failure of the outside clinic to schedule him for steroid injections after the clinic recommended the injections. But the undisputed evidence shows that the defendants acted reasonably. They assumed that because the clinic had recommended the steroid injections, it would set the schedule for the injections. That assumption was not reckless because prison administrators may reasonably rely on treatment schedules set by treating professionals. *Rice*, 675 F.3d at 676. Furthermore, when Gering's doctor at the prison learned from Gering in May 2018 that he had not received the injections, the doctor promptly set the schedule. No evidence suggests that this doctor knew about the scheduling omission until then, and even if he did, we cannot impute one doctor's personal knowledge to the prison administrators. *See Smith v. Sangamon Cty. Sheriff's Dep't*, 715 F.3d 188, 193 (7th Cir. 2013).

We have considered Gering's remaining arguments, and none has merit.

AFFIRMED